UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| FIFTH THIRD BANK, NATIONAL ASSOCIATION, ) ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Civil Action No. 1:21-cv-832 (TSE/TCB) |
| METRO BUSINESS SYSTEMS, *et al.*, ) ) ) | |
| Defendants. ) ) | |

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on Plaintiff Fifth Third Bank, National Association's ("Plaintiff") Motion for Summary Judgment against Defendants Metro Business Systems ("MBS"), Metro Document Systems ("MDS"), and Jerry Allen (collectively "Defendants") (Dkt. 80) and Plaintiff's Motion for Default Judgment against corporate defendants MBS and MDS. (Dkt. 84.)[1] Despite receiving notice of the Motion for Summary Judgment (Dkt. 83), the *pro se* Defendants failed to respond to the Motion for Summary Judgment. The undersigned therefore treats the Motion for Summary Judgment as uncontested. For the reasons articulated below, the undersigned U.S. Magistrate Judge recommends that the Court grant Plaintiff's motion for summary judgment.

---

[1] The relevant filings before the undersigned include Plaintiff's Complaint (Dkt. 1) ("Compl."); Plaintiff's Motion for Summary Judgment ("Mot. Summ. J.") (Dkt. 80); Plaintiff's Memorandum of Law in Support of the Motion for Summary Judgment ("Mem. Supp.") (Dkt. 81); Plaintiff's Motion for Default Judgment ("Mot. Default J.") (Dkt. 84); Plaintiff's Memorandum of Law in Support of the Motion for Default Judgment ("Mem. Supp. Default J.") (Dkt. 85); and all attachments and exhibits submitted with those filings.

1

I. Procedural Background

Plaintiff filed this action on July 15, 2021, asserting claims of recission of contract against Securus (Count I), breach of the nonrecourse loans, security agreements, and nonrecourse promissory notes against Securus (Count II), fraud against MBS and Jerry Allen (Count III), veil piercing and successor liability against Allen and MDS (Count IV), money had and received against all Defendants (Count V), breach of the purchase agreements against MBS (Count VI), and collection and enforcement under Va. Code § 8.9A-607 (Count VII). (Compl. ¶¶ 97-179.)

Plaintiff filed a Motion to Expedite Discovery on July 30, 2021, which the Court granted on August 6, 2021, citing the nature of the allegations, the likelihood that Defendants would hide assets, and Defendant Allen's litigation conduct. (Dkts. 16, 22.) The parties filed and the Court granted the parties' Joint Motion for Preservation of Assets. (Dkt. 32.) On September 17, 2021, Plaintiff filed a motion to compel (Dkt. 41), which the Court granted. (Dkt. 53.) The Honorable T.S. Ellis later denied MBS and Securus Capital, LLC's Motions to Dismiss on November 1, 2021. (Dkt. 60.) The parties subsequently filed a joint motion stipulating the dismissal of Defendant Securus Capital, LLC without prejudice, which the Court granted. (Dkts. 70, 71.)

Counsel for the remaining Defendants, Michael Whitticar, filed a Motion to Withdraw as Attorney on January 14, 2022. (Dkt 74.) After a hearing, Judge Ellis granted Counsel's motion, granting him leave to withdraw, finding irreconcilable differences between Defense Counsel and Defendants. (Dkt. 79.) Judge Ellis gave the corporate Defendants, MBS and MDS twenty-one (21) days to obtain new counsel or risk an entry of default. (*Id.*) On January 27, 2022, Plaintiff filed the instant Motion for Summary Judgement against *pro se* Defendants MBS, MDS, and Allen with an accompanying memorandum in support, Roseboro Notice, and notice of hearing. Plaintiff later waived the hearing. (Dkt. 80.) The Defendants failed to oppose or respond to the

2

Motion for Summary Judgment. MBS and MDS also failed to obtain new counsel within twenty-one days of the Court's order, and Plaintiff filed a Motion for Default Judgment as to MBS and MDS. (Dkt. 84.) Judge Ellis referred both motions (Dkts. 80, 84) to the undersigned to issue this Report & Recommendation. (Dkts. 87, 88.)

## II. STATEMENT OF UNDISPUTED FACTS

Pursuant to Local Rule 56(B), Plaintiff included twenty-nine paragraphs of undisputed facts. Local Civ. R. 56(B); (Mem. Supp. at 4-10.) "[T]he Court may assume facts identified by the moving party in its listing of [undisputed] material facts are admitted, unless such fact is controverted in the statement of genuine issues filed in opposition to the motion." Loc. Civ. R. 56(B). Defendants failed to respond or dispute these facts. Therefore, the Court assumes the following facts to be admitted. *See id.*

### A. Defendants' Scheme to Defraud Fifth Third

MBS purportedly entered into a Master Rental Agreement-Copiers "Master Rental Agreement") with the County on July 11, 2008, for the County to rent copiers, printers, and other equipment described in the equipment schedules. (Mem. Supp. at 4 ¶ 1, Ex. 3, 48:3-8.) MBS purported to execute a series of equipment schedules with the County. (Mem. Supp. at 5 ¶ 2, Ex. 1, 36:14-17.) There are eleven (11) open and unpaid equipment schedules (Nos. 11-21) from March 10, 2016 to July 1, 2020 ("Equipment Schedules") These Equipment Schedules include the same terms and differing amounts owed to MBS. (Mem. Supp. at 5, ¶ 3.) The Equipment Schedules appear to be executed on behalf of and authorized by the County at the time they were executed. (Mem. Supp. at 5 ¶ 4, Ex. 3.) The Equipment Schedules also set forth the equipment's quantities, descriptions, and designated locations in the County's departments. (Mem. Supp. at 5 ¶ 5.)

The attachments to the Equipment Schedules purport to be signed by County officials. (Mem. Supp. at 5, ¶ 6.) The Equipment Schedules also include a "Certificate of Government" certifying that the purported signatory "ha[s] all of the authority necessary to execute and deliver this Certificate[]" and that the equipment "is essential for the functioning of [the County] and is immediately needed by [the County]." (Mem. Supp. at 5, ¶ 7.) These certificates also include purported signatures from county officials (Mem. Supp. at 6 ¶ 8.) MBS sold the purported schedules to Securus Capital LLC ("Securus") to obtain financing for the equipment purportedly being delivered to the County. (Mem. Supp. at 6 ¶ 9.)

MBS and Securus thereby executed eleven (11) purchase agreements ("Purchase Agreements") that coincided with the Equipment Schedules. (Mem. Supp. at 6 ¶ 9.) The Purchase Agreements have the same terms except for the amount owed by the County as to the applicable Equipment Schedule. (Mem. Supp. at 6 ¶ 10.) The Purchase Agreements provide that MBS "hereby consents to the assignment and grant of a security interest by [Securus] to [Fifth Third], in and to (a) the Rental Payments, (b) the Equipment, (c) this Purchase Agreement, and (e) all cash and noncash proceeds relating to the foregoing[.]" (Mem. Supp. at 7 ¶ 12.)

MBS assigned all rights to payment due from the County to Fifth Third through a "Bill of Sale" and "Instrument of Assignment" executed in connection with each Purchase Agreement. (Mem. Supp. at 7 ¶ 13.) Based on this assignment to Fifth Third, Securus obtained loans from Fifth Third to Finance the Purchase Agreements with MBS. (Mem. Supp. at 7 ¶ 14.) These loans included eleven (11) Nonrecourse Loans and Security Agreements and related Nonrecourse Promissory Notes ("Nonrecourse Loans"), which correspond with each Purchase Agreement and Equipment Schedule. (Mem. Supp. at 7 ¶ 14.) The Nonrecourse Loans only vary as to the amounts owed. (Mem. Supp. at 7 ¶ 14.) The Nonrecourse Loans granted Fifth Third a security

4

interest in all of Securus' rights in and proceeds from the Rental Payments, Equipment, and Purchase Agreements. (Mem. Supp. at 7-8 ¶ 15.) Plaintiff Fifth Third has "valid, perfected, first-priority security interest, assignment and lien" in the Equipment and filed financing statements for each Purchase Agreement with the Virginia State Corporation Commission. (Mem. Supp. at 20; Compl. Ex. 6.) The Nonrecourse Loans do not limit Fifth Third's rights or remedies against MBS. (Mem. Supp. at 8 ¶ 16.) The disbursement documents from the Nonrecourse Loans show that the loans were distributed mostly to MBS and partially to Securus. (Mem. Supp. at 8 ¶ 17.)

### B. Plaintiff Discovers Multi-Year Fraudulent Scheme by Defendants

Plaintiff Fifth Third ceased receiving the payments due under the Nonrecourse Loans beginning with the payments due on January 1, 2021. (Mem. Supp. at 8 ¶ 18.) As of the date of filing the Complaint the aggregate outstanding principal balance was $15,180,125.85 plus interest, costs, and fees. (Mem. Supp. at 8 ¶ 19.) And as of the filing of the instant motion, the outstanding balance was $14,769,482.31, plus interest in the amount of $1,587.27 per day, and costs and fees." (Mem. Supp. at 8 ¶ 20, Ex. 4.) Plaintiff investigated the open and unpaid equipment schedules. (Mem. Supp. at 8 ¶ 21.) The investigation revealed that the County's signatures on the Master Rental Agreement and Equipment Schedules were forged and the individuals who executed the documents were never employed by the County. (Mem. Supp. at 8 ¶ 22.) Plaintiff's investigation also revealed that MBS never delivered any equipment to the County. (Mem. Supp. at 9 ¶ 23, Ex. 3.)

### C. Defendants' Litigation Conduct

The Court granted Plaintiff's motion for expedited discovery in the form of a Rule 30(b)(6) deposition of Allen and written discovery limited to the location and the status of the MBS Defendants' assets on August 6, 2021. (Mem. Supp. at 9 ¶ 24.) During Defendant Allen's

deposition on August 20, 2021, he repeatedly invoked the Fifth Amendment privilege against self-incrimination and refused to provide substantive responses regarding the location and status of Defendants' assets. (Mem. Supp. at 9 ¶ 25, Ex. 5.) Plaintiff served interrogatories, requests for production, and requests for admission on Defendants. (Mem. Supp. at 9 ¶ 26.) Defendants asserted Fifth Amendment privilege in response to thirteen of seventeen interrogatories, fourteen of twenty-three requests for production, and one of four requests for admission. (Mem. Supp. at 9 ¶ 25, Ex. 2.)

These assertions of privilege during discovery related to (a) individuals involved in the preparation of the Master Rental Agreement, the Equipment Schedules, and the Purchase Agreements; (b) how the Master Rental Agreement and the Equipment Schedules were negotiated, executed, and otherwise created; (c) information and communications regarding the Equipment, including whether the Equipment was delivered to the County as well as its current location and status; (d) communications with the County; (e) relevant communications with third parties; and (f) Defendants' internal communications. (*Id.*)

Defendants also invoked the Fifth Amendment privilege against self-incrimination throughout their Answer to the Complaint, which they filed on November 11, 2021. (Mem. Supp. at 10 ¶ 27, Ex. 3) (invoking privilege in response to the allegation that "MBS did not actually deliver any copiers, printers, or equipment to the County under [the Equipment Schedules].".) During Allen's second deposition on November 22, 2021, Allen invoked the privilege against self-incrimination in response to questions regarding (a) the preparation or execution of the Master Rental Agreement and the Equipment Schedules; (b) communications or interactions with the County representatives; (c) whether the Equipment was ever actually purchased or delivered to the County; (d) in response to questions directed at the allegations in

the Complaint; and (e) when asked if he had "any evidence" that "constitutes a defense to the allegations" asserted against Defendants. (Mem. Supp. at 10 ¶ 28, Ex. 3.)

### III. STANDARD OF REVIEW

The Court must render summary judgment where "the movant shows that there is no genuine dispute of material fact as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 65(a); *see Clark v. Alexander*, 85 F.3d 146, 150 (4th Cir. 1996). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant must present to the court the basis of the motion and demonstrate the absence of any disputed material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party must provide "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 65(e)).

### IV. ANALYSIS

Plaintiff's Motion argues that the Court should grant their motion because Defendants' invocation of the Fifth Amendment destroys their ability to assert any defenses to the allegations and permits the Court to deduce unfavorable inferences from those assertions. (Mem. Supp. at 4, 12-13, 15-16.) Plaintiff further argues that it satisfied its burden and no dispute of material fact exists as to Counts III, IV, V, VI, and VII. Defendants failed to file any opposition to these contentions. The undersigned will address each argument in turn.

#### A. Defendants' Assertions of Fifth Amendment Privilege

Plaintiff first argues that Defendants' invocation of the Fifth Amendment privilege against self-incrimination prevents them from defending against the allegations of their

7

wrongdoing and permits the Court to draw adverse inferences against Defendants. (Mem. Supp. at 4, 12-13, 15-16.) By invoking the Fifth Amendment privilege against self-incrimination, parties to a civil proceeding "risk fatally undermining their interests in the civil matter," and the privilege "cannot fill an evidentiary void left by their silence." *In re Phillips, Beckwith & Hall*, 896 F. Supp. 553 (Aug. 2, 1995) (citing *United States v. Rylander*, 460 U.S. 752, 758, 103 S. Ct. 1548, 1553 (1983)). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by[] . . . showing that the materials cited do not establish the absence or presence of a genuine dispute of material fact." Fed. R. Civ. P. 56(c)(1)(B).

Additionally, the Fifth Amendment does not prevent a court from drawing an adverse inference against a party who asserts the privilege against self-incrimination in a civil case. *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 179 (4th Cir. 2002) (citing *Baxter v Palmigiano*, 425 U.S. 308, 318, 96 S. Ct. 1551, 1558 (1976)); *see also U.S. ex rel. DRC, Inc. v. Custer Battles, LLC*, 415 F. Supp. 2d 628, 633 (E.D. Va. Feb. 13, 2006).

Here, by asserting Fifth Amendment privilege throughout this litigation, Defendants eliminated their ability to "produce admissible evidence" contradicting Plaintiffs' claims. Fed. R. Civ. P. 56(c)(1)(B). Because of Defendants' invocation of the privilege, the Court may also draw adverse inferences against them. *See U.S. ex rel. DRC, Inc.*, 415 F. Supp. 2d at 633. The undersigned therefore infers the following:

> (1) "MBS and Allen forged signatures of real and non-existent County employees on the Master Rental Agreement, Equipment Schedules, and related instruments;
> (2) No equipment was leased or delivered to the County pursuant to the Equipment Schedules;
> (3) MBS and Allen intentionally made false representations of material fact related to MBS's business relationship with the County and the legitimacy of the underlying instruments to induce Securus to execute the Purchase Agreements, and, relatedly, to induce Fifth Third to advance loan amounts pursuant to the terms of the Nonrecourse Loan and Security Agreements."

(Mem. Supp. at 13.)

### B. Fraud Against MBS (Count III)

There is no genuine issue of material fact that MBS committed fraud. Under Virginia law, a party asserting fraud must prove by clear and convincing evidence (1) a false representation, (2) of material fact, (3) made intentionally or knowingly, (4) with intent to mislead, (5) reliance by the party mislead, and (6) resulting damage to the party misled." *Alexander v. Se. Wholesale Corp.*, 978 F. Supp. 2d 615, 622 (E.D. Va. Oct. 17, 2013).

*First*, MBS made false representations when it forged the signatures of County officials on the Master Rental Agreement and Equipment Schedules. (*See* Mem. Supp., Ex. 3.) MBS also falsely represented the enforceability of the documents underlying the eleven Purchase Agreements, such as the Equipment Schedules. *Second*, MBS's representations in these documents are material because the parties' business relationship was based on the subject matter of the Master Rental Agreement and the Equipment Schedules. Plaintiff would not have issued the loan to MBS if it knew that the documents were forged and illegitimate and that no equipment existed.

*Third*, that MBS intentionally and knowingly made these misrepresentations may be inferred from the undisputed facts and the adverse inferences against MBS discussed above. MBS forged the signatures of County officials on documents purporting to lease certain equipment to the County. No such County officials nor equipment existed. No evidence suggests that MBS was merely mistaken or negligent in these misrepresentations. The Court further infers that these misrepresentations were intentionally made. Therefore, the undersigned finds that MBS acted intentionally and knowingly.

*Fourth*, as discussed above and inferred by the Court, these intentional and knowing misrepresentations were made with the specific intent to mislead Plaintiff into issuing the loans

9

and funding the sham transactions. *Fifth,* Plaintiff Fifth Third Bank relied on the underlying forged and unenforceable documents created by MBS's misrepresentations and issued loans to MBS. *Finally,* resulting damage to Plaintiff based on their reliance on the false representation.

Defendants asserted the Fifth Amendment privilege against self-incrimination as to the allegations of fraud and did not file any opposition to Plaintiff's Motion. Therefore, even if Defendants responded, they have no evidence contradicting these allegations. Accordingly, the undersigned finds that there is no genuine dispute of material fact as to that Defendant MBS committed fraud under Virginia common law, and Plaintiff is entitled to judgment as a matter of law. The undersigned recommends that the Court grant summary judgment on Count III.

### C. Breach of Purchase Agreements Against MBS (Count VI)

There is no genuine dispute of material fact that MBS breached the Purchase Agreements. Under Virginia law, a plaintiff must prove three elements to succeed on a breach of contract claim: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation;" and (3) "injury or damage to the plaintiff caused by the breach of obligation." *Squire v. Va. Hous. Dev. Auth.*, 287 Va. 507, 517, 758 S.E.2d 55, 60 (2014) (quoting *Filak v. George*, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004)). Plaintiffs may sue to enforce an agreement as third-party beneficiaries. *Levine v. Selective Ins. Co. of Am.*, 250 Va. 282, 285, 462 S.E.2d 81, 83 (1995). The third-party beneficiary must show "that the parties to the contract clearly and definitely intended [the agreement] to confer a benefit upon [the third party]." *Ward v. Ernst & Young*, 246 Va. 317, 330, 435 S.E. 2d 628, 634 (1993). Creditor beneficiaries are a typical example of intended third-party beneficiaries. *BIS Comput. Sols., Inc. v. City of Richmond*, 122 F. App'x 608, 612 (4th Cir. 2005).

Here, MBS and Securus entered into eleven Purchase Agreements. These Purchase

Agreements explicitly state that "[MBS] hereby consents to the assignment and grant of a security interest by [Securus] to [Fifth Third], in and to the (a) the Rental Payments, (b) the Equipment, (c) this Purchase Agreement, (d) the Rental Agreement, and (e) all cash and noncash proceeds relating to the foregoing[.]" (*See, e.g.*, Compl., Ex. C ¶ 11.) The "Instrument of Assignment" for the Equipment Schedules also provide that MBS "assigns to [Fifth Third] . . . all of [MBS's] right, title, and interest now owed and hereafter acquired in to all moneys due or to become due under" each Equipment Schedule. (*See, e.g.*, Compl., Ex. C at 6.) Therefore, the undersigned finds that MBS and Securus "clearly and definitely" intended Plaintiff Fifth Third to be a third-party beneficiary to the Purchase Agreements. As an intended third-party beneficiary, Plaintiff may sue to enforce the Purchase Agreements.

MBS materially breached the Purchase Agreements by forging illegitimate documents that were not legal, valid, or binding against MBS or the County. These purported and forged Rental Agreements and Equipment Schedules with the County underlie the Purchase Agreements. The Purchase Agreements explicitly promise that "the execution, delivery, and performance by [MBS] of this Agreement . . . will not conflict with, result in a breach of, or constitute default under, any provision of applicable law." (Compl., Ex. C.) MBS further promised in the Purchase Agreements that each underlying Rental Agreement and Equipment Schedule "constitutes a legal, valid and binding agreement of [MBS] and is enforceable in accordance with its terms" and "constitutes a legal, valid and binding agreement of [the County] and is enforceable in accordance with its terms." (Compl., Ex. C.) As established above, these underlying Rental Agreements and Equipment Schedules are not legal, valid, or binding but instead are fraudulent documents never signed by any actual County employee. Because MBS forged the underlying agreements, MBS breached the terms of the Purchase Agreements the

moment that they were executed.

MBS did not file any opposition and invoked the Fifth Amendment privilege against self-incrimination on this subject. MBS has no viable defense to this claim, and the undersigned finds that there is no dispute of material fact that MBS breached the Purchase Agreements. The undersigned therefore recommends that the Court enter summary judgment against MBS as to Count VI.

### D. Alter Ego and Successor Liability Against Allen and MDS (Count IV)

Plaintiff argues that there is no genuine dispute of material fact that Defendants Jeremy Allen and MDS are liable under a veil piercing theory of liability for MBS's fraud and breach of the purchase agreements. Plaintiff argues that (1) Allen is an alter ego of MBS and should be held liable for MBS's fraud under a veil-piercing theory and (2) MDS is an alter ego or successor of MBS and therefore should be held liable for MBS's breach of the Purchase Agreements.

(1) Allen's Alter Ego Liability for MBS's Fraud

"Virginia has long recognized veil piercing claims." *C.F. Tr., Inc. v. First Flight Ltd. P'ship*, 306 F.3d 126, 134 (4th Cir. 2002). Courts may pierce the corporate veil "when the unity of interest and ownership is such that the separate personalities of the corporation and the individual no longer exist and to adhere to that separateness would work an injustice." *O'Hazza v. Credit Corp.*, 246 Va. 111, 115, 431 S.E.2d 318, 321 (1993). To pierce a corporate veil, a party must prove that (1) the corporation is "the alter ego, alias, stooge, or dummy" of the individual and (2) the individual used the corporation to "evade a personal obligation, to perpetuate fraud or a crime, to commit an injustice, or to gain an unfair advantage." *C.F. Tr., Inc.*, 306 F.3d at 135. Plaintiff argues that Allen used MBS as an "alter ego, alias, stooge, or dummy" that Allen used "to perpetrate fraud." (Mem. Supp. at 17-18).

*First*, Allen is the sole owner, officer, and director of MBS with complete control over its activities. (Mem. Supp., Ex. 3.) MBS was forfeited by the laws of Maryland as of 2016, and Allen is directly liable for all actions taken after that date. MBS has not filed a state or federal tax return since 2012. (Mem. Supp., Exs. 2, 3.) Therefore, the undersigned finds no dispute of material fact that MBS and Allen are alter egos. *See C.F. Tr., Inc.*, 306 F.3d at 135. *Second*, Allen invoked the Fifth Amendment privilege when asked whether and how his personal funds were comingled with MBS's corporate assets. (*See id.* at 23:16-24:9.) As discussed above, there is no genuine dispute of material fact that MBS perpetrated fraud. Therefore, the undersigned finds no dispute of material fact that Allen used MBS as an alter ego to perpetrate fraud.

Because both elements are met, the undersigned recommends that the Court pierce the corporate veil and hold Allen liable for MBS's fraud.

(2)  <u>MDS's Successor Liability for MBS's Fraud and Breaches</u>

The Fourth Circuit prescribes "several factors that guide the determination of whether one entity constitutes the alter ego of another." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F. 3d 527, 544 (4th Cir. 2013). These factors include "gross undercapitalization, insolvency, siphoning of funds, failure to observe corporate formalities . . . intermingling of funds, overlap of ownership, . . . common office space, the degrees of discretion shown by the allegedly dominated corporation, and whether the dealings of the entities are at arm's length." *Id.* The essential inquiry into whether one entity's liabilities should pass to a successor is whether there has been a "mere continuation" of that original entity. *Blizzard v. Nat'l R.R. Passenger Corp.*, 831 F. Supp. 544, 548 (E.D. Va. Sept. 22, 1993).

Because MDS is a "mere continuation" of MBS and many of the *Vitol* factors are present, Plaintiff argues that MDS is the successor/alter ego of MBS. Allen formed MDS after MBS was

13

forfeited. MDS uses the same domain name, phone number, registered office, and physical address as MBS. There is absolute identity of ownership and management between MBS and MDS. MDS and MBS engaged in the same type of business activities, such as the purported sale, leasing, and servicing of office equipment. MBS and MDS maintained a single EAutomate online financial accounting book. Allen created MDS to "eventually phase out [MBS] and go with [MDS]." (Mem. Supp. Ex. 3, 11:3-12:3.) Therefore, the undersigned finds that MDS is a "mere continuation" and successor of MBS and recommends that the Court hold MDS liable for MBS's fraud and breach of contract.

Accordingly, the undersigned recommends that the Court grant summary judgment as to Count IV and to hold MDS and Allen jointly and severally liable for MBS's fraud and breaches.

### E. **Money Had and Received Against MBS and MDS (Count V)**

Under Virginia law, money had and received serves as an equitable alternative to breach of contract. *See Robertson v. Robertson*, 137 Va. 378, 119 S.E. 140 (1923). Here, the undersigned finds no dispute of material fact and recommends that summary judgment is proper as to Plaintiff's breach of contract claim. Therefore, the undersigned does not find it necessary to address this Count, unless the Honorable Judge Ellis concludes otherwise.

### E. **Collection and Enforcement by a Secured Party (Count VII)**

Plaintiff argues that it is entitled to collect enforce Securus' obligations under Virginia's Commercial Code. Va. Code Ann. § 8.9A-697. Virginia's Commercial Code provides that "[i]f so agreed, and in any event after default, a secured party . . . may notify an account debtor or other person obligates on collateral to make payment or otherwise render performance to or for the benefit of the secured party." Va. Code Ann. § 8.9A-697(a)(1). A secured party is entitled to "reasonable expenses of collection and enforcement, including reasonable attorney's fees and

legal expenses incurred by the secured party." Va. Code Ann. § 8.9A-607(d).

The Nonrecourse Loans and Security Agreements provide that MBS may be in default:

> [i]f one or more of the following events ("Events of Default") occurs and continues: (a) Lender fails to receive any principal of or interest on the Note or other amount payable hereunder within five days following the due date thereof; (b) Borrower or Contractor fails to observe or perform any of its respective covenants or agreements contained in the Purchase Agreement, this Agreement, any other Loan Document (other than the agreement to pay principal or interest on the Note) for 20 days after written notice thereof has been given to Borrower or Contractor, as applicable, by Lender; (c) any representation, warranty or certification made by Borrower in this Agreement, any other Loan Document, or made by Contractor in the Purchase Agreement, proves to have been incorrect in any material respect when made; . . .

(Compl., Ex. D.) Plaintiff Fifth Third has a "valid, perfected, first-priority security interest, assignment and lien" on the Equipment under the Nonrecourse Loans. (Mem Supp. at 20.) Fifth Third performed the all conditions under the Nonrecourse Loans. However, MBS has made materially incorrect representations and warranties in the Purchase Agreement and has been in payment default since January 1, 2021. MBS is therefore in default under the Nonrecourse Loans. On May 17, 2021, Plaintiff provided MBS with Written Notice of Events of Default under the Nonrecourse Loans. (Mem. Supp. at 20, Ex. 7.) Therefore, the undersigned finds that there is no dispute of material fact that MBS is in default under the Nonrecourse Loans and that Plaintiff is entitled to payment. Accordingly, the undersigned recommends that the Court enter summary judgment against MBS as to Count VII.

## V. REQUESTED RELIEF

The Plaintiff's Complaint requests compensatory relief and fees and costs, among other relief. As the Motion for Summary Judgment does not specifically brief the Court on the amounts to be awarded, the undersigned recommends that the Court order Plaintiff to provide briefing as to the appropriate joint and several relief sought against Defendants.

## V. RECOMMENDATION

For the reasons articulated above, the undersigned recommends that the Court enter an order granting Plaintiff's Motion for Summary Judgment (Dkt. 80), thereby entering judgment in favor of Plaintiff and against Defendants MBS, MDS, and Jerry Allen. Further, the undersigned recommends that the Court award Plaintiff compensatory damages, fees and costs, and other necessary relief in amounts to be briefed by Plaintiff. The undersigned also recommends that the Court deny Plaintiff's Motion for Default Judgment as to the Corporate Defendants as moot.

## VI. NOTICE

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

/s/
THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

April 29, 2022
Alexandria, Virginia